By the Chancellor.

I have devoted much time to this case ; and, I confess, that when a motion was formerly made to dissolve the injunction, I thought differently from what I do now; but surely I was under an erroneous impression, and I now take much pleasure in receding from it. It is not my habit to take up much time in Court in delivering my opinions, as I deem time of more importance than -words to the suitors : otherwise, upon this siibject, I could write a volume; and, while I have not less respect for English Judges and English opinions, than other gentlemen ; yet I have too much regard for myself, and the Rational character of my country, to rely upon English books, farther than for information merely, but not as authority : it was the common law we adopted, and not English decisions; and we should take the standard of that law, namely, that we would live honestly, should hurt nobody, and should render to every one his due, for our judicial guide. By this standard then, let this cause be adjusted; to do which, we must understand what was the former *464 rule, upon coming into equity, in a case like the present. Before the third section of our present act against usury(a) ''vas introduced into our laws, the rule with respect to relief in equity against a usurious contract was this; that .if the borrower brought a bill in chancery against the lender, to compel him to discover the usury, he might demur, because it subjected him to a penalty; and no one, upon principles of natural and universal justice, could be compel» led to subject himself, In order, therefore, to compel a discovery of the usury, the borrower had to waive the penalty, and to offer pa} ment of the principal money, with legal interest, and then the lender was compelled to answer and make the discovery, upon which relief was afforded against the illegal interest, upon this maxim, that he who seeks equity, must do it. But the third section in our act declares, that a borrower may exhibit his bill in equity against the lender, and compel him to discover, on oath, all the circumstances in relation to that transaction, and if, thereupon, it shall appear, that more than lawful interest was reserved, he shall be obliged to accept his principal money, without any interest or other consideration, and pay costs; but shall be discharged of all other penalties of that act. The difference then between the former and the present rule, is this; that, by th e former, relief in equity could be only obtained upon doing complete justice, by paying the principal money and legal interest; but by the latter, it may be obtained upon payment of the principal money without interest. But I understand the counsel for the defendant to contend, that he is entitled to the full benefit of the former rule, unless ’ the case falls expressly within the latter, as the discovery .of the usury was not made by his answer, but proved upon him. But, as well the former, as the present rule, was predicated upon the ground, that there was no relief at law : and surely it never was intended to preclude a borrower from relief in equity, if, from circumstances which he could not control, he was prevented from making his defence at law’: and then *465 whether upon the latter, or the former ground, if relief in equity should be asked, the rule in both cases should be the same ; for I apprehend that the legislature did not mean to place the lender who should not make the discovery, in a better situation than the one who should make it. For example, a bill for relief is filed ; the defendant, the lender, in his answer, admits the allegations of the bill to be true j then he shall be obliged to accept his principal money, without any interest, pay costs, and be discharged of all other penalties imposed by the act. But, if he had evaded the truth, though the usury should be proved upon him, he should, as I understand the counsel, be entitled to his principal money and legal interest, agreeably to theformer rule; k not being a case expressly within the latter, as. prescribed by the third section of the act. But this cannot be a fair exposition of the legislative will, as it would be an inducement to every lender, to withhold a fair disclosure of facts : upon this calculation, “ if they are disclosed, I lose all my interest, but if they are not disclosed, though they may be proved, I shall get lawful interest; and, if they are not proved, Í get my lawful and unlawful gain but when the lender is, in either case, to lose all his interest, whether upon his discovery of the usury, or upon the plaintiff’s proof, there is no inducement held out to him, to withhold the truth.
One word upon the main pillar of Mr. Hay's argument, Ss that the plaintiff was operated upon by the effect of the deeds of trust, and, having had no day in a Court of Law, was compelled to come into this Court, for he could go no where else.” This is true, and, under the operation of these deeds, the plaintiff was placed precisely in the situation of a man against whom there is a judgment at law, upon a usurious bond, because he and his witnesses were all sick, and could not attend the trial, and therefore a judgment was rendered against him. Now this man must pay the usury, ih the judgment, unless he can be relieved in equity • and *466 there is no doubt about it. And so with respect to the present plaintiff; his property was to have passed off under the hammer of the cryer, but for the interposing hand of this Court. He is then the applicant here for relief, to which he is most clearly entitled; but the question is, as to the extent of that relief. The answer is, that he must do justice, so far as the law will authorize it, in order to obtain it; and therefore he must pay the principal money without any interest; and the defendant must be deprived of all gain by the contract, which was corrupted by the usury, pay costs, and stand discharged from all other penalties of the act.
The decree may be to this effect:
That if the plaintiff shall pay to the defendant so much of 2,500 dollars, being the principal money, without interest, as shall remain after deducting all costs, and 129 dollars, (acknowledged to have been received,) on or before the-first of October next, the injunction may be made perpetual, and the deeds of trust, and a note for 95 dollars, in the bill mentioned, are to be delivered up to be cancelled, and the defendant to be discharged of all other penalties imposed by the act. But if such payment be not made, then the injunction for so much of the principal, as shall remain as aforesaid, shall stand dissolved as an act of this day, and the deeds remain as a security for the same, and Charles Cop~ land, Esq. may be appointed a Commissioner to proceed agreeably to the'terms of the deeds, to raise the amount thereof, and to report the proceedings to the Court in order to a final decree.
To this decree, Mr. Tiny objected, and referred the Court to many precedents in the English books.

Curia advisare vidu

On the next day,

By the Chancellor.

The principle in this case is settled. Marks is relieved against the hardship of the contract, and *467 Morris is to take bis principal money without interest, pay costs, and be discharged of all other penalties imposed by the act.
The question, now is, as to the form of the decree, about which there would be no difficulty, if Marks’s counsel had not intimated a disposition to get out of Court, in order to occupy his legal stand again ; to prevent which,, when the Court said, the deeds in the bill mentioned might stand as a security for the principal money, it was objected as a solecism, that deeds void by law should be set up in equity ; and in support of this objection, the Court has been referred to Vernon, Precedents in Chancery, Atkyns, Brown, and Fonblanque. Let these books be examined in their chronological order: and first,
1 Vern. 467. Bell v. Price. The bill in that case was filed to he relieved against several securities for goods sold at five for one, and the Court is reported to have said, that the plaintiff’s security should be delivered up, on payment of what was really and bona fide paid to him.
2. The Precedents in Chancery, 80. Smith v. Soader. The bill in that case was to be relieved against a recognisance for a much larger sum than had been advanced ; and the Master of the Rolls decreed a perpetual injunction, upon the payment of the principal money and interest, and the Chancellor affirmed the decree.
3. 3 Atkyns, 287. Lawley v. Hooper. And, although the Chancellor, in that case, thought the transaction a shift to avoid the statutes of usury, yet, he said, -there was no necessity to determine that point, and decreed relief on certain terms specified in the decree, upon the ground that the agreement, though for an absolute sale, was such as a Court of Equity should not suffer: and by the decree it was provided, that if the terms were refused, the bill should be dismissed. :
4. 1 Bro. 398. Lowther v. The Countess Dawager of Andover et al.; where the bill ivas filed for a specific per *468 formance of certain articles, and the Court said, that, if upon a tender of a sufficient conveyance, the money was mot paid, the plaintiff’s bill should be dismissed.
5. 4 Bro. 439. Mason v. Gardenier; where the question was, whether a bill, for the discovery of the usury, withOut stating that the plaintiff was ready to pay principal and interest upon demurrer, was good, and could be entertained : and the Chancellor said it was not.
. 6. 1 Fonb.; where it is laid down, that the court will attend to the claims of equal justice, and will never interfere, unless the plaintiff will consent to do that which is right. I understand that the object of the plaintiff’s counsel in referring the Court to those cases, was to prove that, where relief is afforded upon terms, the. party, who obtains it, is at liberty to accept of the terms or nqt; and this is admitted, so far as the relief goes, and no farther: then how far does the relief go in this case ? To all but the principal money; and the Court will not compel the plaintiff to accept of its relief; for, if he pleases, he may pay the usury; but the Court will put it in his .power not to do it; and this is all- the Court can do as to the relief; but the question is as to the principal money ? Shall Marks have the aid of the Court, and not Morris V Shall the Court not aid Morris in getting from Marks that which he may withhold ? Or, shall the Court suffer Marks to go out protected agai’isl the usury, and put Morris to his action at law for the prin-cipalf Would this be right, while both are here, and, according to Fonbianque, entitled to equal justice ? I think not. • In the cases to which I have been referred, there was no necessity for the Court to go farther than it did: because, the agreements were all good at law, and the defendants in equity were to be benefited, if the plaintiffs refused the terms on which they were relieved; and therefore the defendants did not object; for it was their interest to be at law; “ but,” says Morris, “ this is not my case: a Court of Law will not do for me; you have said my deeds are tainted with usury, and that, if Marks will pay me 2,500 *469 dollars, my securities shall be cancelled ; but if he will not, how am I to get that sum ? Must I sue him ? If I do, he pleads the usury, and proves it upon me, by your decree: so that, although law and equity says, I am to have my principal money, without interest, pay costs, 'and be discharged of all other penalties; yet equity will not help me, while it relieves Marks /” It is this view which Morris is made to take of his own case, that makes it the duty of the Court to provide for him, as well as for Marks : for surely, it will be a solecism, to say that the contract is so far legal and equitable, that the principal money shall be paid, but the deeds, by which such principal is secured, shall not be set up in equity, to secure the payment of that principal which the act compels the lender to take: I think they may ; and so said the English Chancellor in the case of Scott v. Nesbitt. It is true, that that was the case of a judgment, which, the Chancellor said, could only be displaced upon doing what was right, and that the judgment should stand as a security for the money actually paid with legal interest; and all Mr. Hay’s arguments went to prove, in this very case, that Marks occupied a ground on which, at law, there was no relief. Between Marks -then, and a judgment debtor, no difference is discerned ; and, if the principle laid down, by the judge, in Scott against Nesbitt, was correct with respect to a judgment, it must be equally so with respect to the deeds in this case; and, more especially, as it may prevent another contest, which this Court should not be the means of producing, while it holds in its own hands the means of preventing it. But it is said, the Chancellor in Scott against Nesbitt did not understand the case: how this was I do not know; but, if he did not, he guessed well, for he struck upon the only principle that secured equal justice to the parties, while he relieved against the hardships of the case at the same time. But, if he had not clone it, I would ■ my predecessor did it in Hill and Hook j and I shall do it in the case before' me.
*470 i am perfectly satisfied with the frame of the decree delivered out on yesterday, conformably to which the clerk may draw it up and have it entered.

 1 Rev. Code, p. 37.